**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NATION LAND COMPANY, LLC, | ) | CASE NO.  5:25-cv-1826 |
| | ) | |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| MICHAEL L. SANDER., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

This case concerns an alleged default on a promissory note. Plaintiff Nation Land Company, LLC ("Nation Land") now moves for partial summary judgment against defendant Michael L. Sander ("Sander"). (Doc. No. 20 (Motion).) The motion requests a ruling by this Court that Nation Land is entitled to judgment as a matter of law as to the claim for failure to pay the note and resulting contractual damages totaling $3,099,724.62.

Sander's answer to the complaint, as well as his briefing opposing the motion, do not deny or even meaningfully contest Nation Land's factual allegations or underlying liability for contract breach. Sander does, however, successfully dispute the enforceability of the contractual late fee Nation Land relied on to calculate its requested damages. For the reasons stated herein, the motion for partial summary judgment is **GRANTED in part** and **DENIED in part**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Nation Land Company, LLC, an Ohio limited liability company, represents that it issued a loan in the amount of $1,260,000.00 to Oregon resident Michael L. Sander on December 12, 2023.

(Doc. No. 1-1 (Complaint), at 3.)[1] Nation Land alleges that "the funds were to be used for business purposes." (*Id.* at 4.) This loan was memorialized via a promissory note with the signatures of both parties on the final page. (*See id*. at 7–10.) The note specifies that it is to be governed by Ohio law (*id.* at 8) and selects as the forum for disputes "any state or federal court sitting in Stark or Summit County, Ohio[.]" (*Id.* at 9.)

Under the note's terms, Sander agreed to repay Nation Land the full sum of $1.26 million, plus "interest on the outstanding principal balance of th[e] Note at the accrued interest rate equal to Thirty Percent (30.0%)."[2] (*Id.* at 7.) The note further provides that Sander "shall pay lender the full amount" on or before March 11, 2024 (the "maturity date"). (*Id.*) The 30% interest rate ("standard interest" or "standard rate") accrues "on the outstanding balance from this date [December 12, 2023] until paid." (*Id.*) For any payment due past the due date, Sander "shall pay a late fee equal to 25%) [sic] of the amount of the payment not made." (*Id.*) Regarding the order of payments, the note gives Nation Land the discretion to "apply all payments received . . . to any unpaid late charges and prepayment premiums, accrued and unpaid interest then due and owing, and the reduction of principal . . . in such order and in such amounts as [Nation Land] may determine from time to time." (*Id.*)

A section of the note titled "Events of Default" outlines actions that constitute breach. An "Event of Default" is defined as any one of a list of ten events. (*Id.* at 7–8.) The first of the list is at issue and occurs if "the interest hereon shall not be paid in full punctually when due and payable

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

[2] The note does not specify the accrual timeline for the 30% rate, although both parties appear to assume it accrues per annum. (*See* Doc. No. 23, at 4 (calculating interest based on 30% APR).) Moreover, the 40% interest rate in the default rate clause, which is charged alongside the 30% rate, explicitly states it accrues annually. Reading this in the context of the entire note, the Court will adopt the parties' assumption of an annual rate and construe the 30% rate as accruing per annum.

or within three days thereafter" or "if the principal hereof shall not be paid in full punctually when due and payable." (*Id.*)

If an "Event of Default" occurs, Nation Land can elect to charge a different interest rate as stipulated in a section titled "Default Rate." (*Id.* at 7.) The Default Rate section states as follows:

> At Lender's election, without notice or demand, Borrower shall pay interest at an accrued annual interest rate of Forty Percent (40.0%) plus the applicable interest rate under this Note ("Default Rate") on the outstanding balance of this Note during the period that any Event of Default exists . . . , on past due interest on this Note, on all other amounts payable to Lender by Borrower in connection with this Note, and on any unsatisfied judgment on this Note.

(*Id.*)

Nation Land alleges that "Sander failed to pay the Note when due on March 11, 2024." (*Id.* at 4.) It further avers that "[r]epeated demands for payment have been made and no payment has been made, in whole or in part, on the Note and the entire Note is due and payable." (*Id.*)

Nation Land brought suit against Sander in the Stark County Court of Common Pleas on July 29, 2025. (*See id.* at 3.) The complaint seeks recovery for contract breach and consequential and other damages caused by Nation Land's reliance on Sander's false representations regarding his business connections and financial ability to repay the considerable sum. (*See id.*)

Sander removed this action to federal court pursuant to 28 U.S.C. § 1446 on September 2, 2025. (Doc. No. 1 (Notice of Removal).) At the time, Sander was proceeding *pro se*. He then failed to answer by the deadline. (*See* Doc. No. 5 (Application for Entry of Default)). On September 10, 2025, Nation Land filed a motion styled "Motion for Judgment" (Doc. No. 3 (Motion for Judgment)) and applied for entry of default (Doc. No. 5). The Clerk of Court entered default against Sander on September 15, 2025. (Doc. No. 7 (Vacated Entry of Default).) Days later, on September 17, 2025, Sander moved for an extension of time to answer. (Doc. No. 10 (Motion to Set Aside Judgment).) He then filed an answer on October 15, 2025. (Doc. No. 14 (Answer).) The

3

Court vacated the default judgment on November 10, 2025, and considered the answer as timely filed. (*See* Doc. No. 17 (Memorandum Opinion and Order).)

On November 19, 2025, Nation Land filed the instant motion for partial summary judgment on the breach of contract claim. (Doc. No. 20.) Nation Land asks for a judgment of $3,099,724.62, plus continuing interest. (*Id.* at 4–5.) Nation Land represents that the sum represents the $1.26 million unpaid principal, the 25% late fee, and the applicable default rate. (*See id.* at 4; Doc. No. 20-1 (Declaration of William Rudner), at 1–2.)

Sander retained counsel on December 16, 2025, and sought an extension of time to respond to the summary judgment motion.[3] (Doc. No. 22 (Motion for Extension of Time).) Sander then filed a response and requested that the Court defer on ruling on Nation Land's motion to allow further discovery. (Doc. No. 23 (Response).) Nation Land filed a reply shortly thereafter. (Doc. No. 24 (Reply).) At a telephonic status conference, the Court directed the plaintiff to respond to some of Sander's untimely discovery requests, and granted Sander leave to file a supplemental response to the pending motion for partial summary judgment so he could incorporate additional facts from discovery. (Minutes of Proceedings [non-document], 04/07/2026.) The deadline to file that brief was April 20, 2026 (*id.*), but no further briefing was submitted. Nation Land's motion is now fully briefed and is ripe for disposition.

---

[3] Although Sander was initially a *pro se* defendant, he is now represented by counsel, and counsel has had an opportunity to review and amend Sander's prior *pro se* pleadings as needed. Once counsel has been retained and afforded an opportunity to amend prior *pro se* pleadings, the liberal pleading standard need not apply. *See Crenshaw v. Portfolio Recovery Assocs., LLC*, No. 1:23-cv-474, 2023 WL 6958635, at *2 (N.D. Ohio Oct. 20, 2023) (citing *Baker v. Madison*, 67 F.4th 1268 (11th Cir. 2023)). Accordingly, the Court will not construe any of Sander's pleadings under the *pro se* standard, but rather as ordinary pleadings filed under the advice of counsel. *See id.* at *1.

## II. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005) (quoting Fed. R. Civ. P. 56). The moving party bears the burden of showing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994) (citation omitted). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (citation omitted). A dispute is "genuine" if the evidence is such that a reasonable jury could find that the nonmoving party is entitled to a verdict. *Id.* (citation omitted); *Lansing Dairy*, 39 F.3d at 1347.

A court reviewing a summary judgment motion must view the evidence presented in the light most favorable to the non-moving party when determining whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). When the moving party bears the ultimate burden of persuasion at trial, the moving party's initial summary judgment burden is "'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonably jury would be free to disbelieve it.'" *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (quoting 11 James William Moore, et al., Moore's Federal Practice § 56.13[1], at 56–138 (3d ed. 2000)).

"[W]hen a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)) (footnote omitted). "If the disputed evidence 'is merely

colorable, or is not significantly probative, summary judgment may be granted.'" *Lansing Dairy*, 39 F.3d at 1347 (quoting *Anderson*, 477 U.S. at 249–50). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citation omitted). The non-moving party has an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992); *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). And "[s]tatements in pleadings that acknowledge the truth of some matter alleged by an opposing party are judicial admissions binding on the party making them." *Ahghazali v. Sec'y of Health & Hum. Servs.*, 867 F.2d 921, 927 (6th Cir. 1989).

### III.   LAW AND ANALYSIS

Nation Land contends that it is entitled to summary judgment on its breach of contract claim in the amount of $3,099,724.62. (Doc. No. 20, at 4.) That figure purportedly constitutes the sum of the entire principal, the 25% late fee, and the combination of two contractual interest rate terms. (*Id.*)

"A holder of a promissory note 'establishes a prima facie case for payment on a note where the note is placed in evidence and the maker's signature is admitted.'" *Konica Minolta Bus. Sols., U.S.A., Inc. v. Allied Off. Prods., Inc.*, 724 F. Supp. 2d 861, 872 (S.D. Ohio 2010) (quoting *Cadle Co. v. Toler*, No. 90AP-1380, 1991 WL 94437, at *1 (Ohio Ct. App. May 28, 1991)).[4] Here, Nation Land makes a prima facie case for repayment by including in the complaint a copy of its

---

[4] The Court has diversity over the above-captioned case, which was removed from state court. (Doc. No. 1, at 1.) The parties are citizens of different states (Oregon and Ohio, respectively) and the amount in controversy far exceeds $75,000. (*Id.*) "In a diversity action, a federal court applies the choice of law rules of the state in which the court sits." *Konica Minolta*, 724 F. Supp. 2d at 867 (internal quotations and citations omitted). Ohio choice of law rules require courts to "apply the law of the state chosen by the parties to a contract to govern their contractual rights and duties." *Id.* (citing *Ohayon v. Safeco Ins. Co.*, 747 N.E.2d 206, 209 (Ohio 2001)). Here, the promissory note states that it is governed by Ohio law. (Doc. No. 1-1, at 8.) Ohio law is thus the controlling law for this contract breach action.

promissory note with the payment terms and the signatures of both parties. (Doc. No. 1-1, at 3, 7–10.) Sander does not contest its authenticity.

Nation Land also proffers sufficient proof of damages. On a summary judgment motion, "an affidavit on personal knowledge by an employee of the lender that states the amount of deficiency meets the lender's initial summary judgment burden, and if the non-moving party does not offer *some* evidence 'pertaining to the existence or the amount of the deficiency,' [] then summary judgment is warranted." *PNC Bank Nat'l Ass'n v. MB Wholesale, Inc.*, No. 17-cv-11295, 2018 WL 3708076, at *10 (E.D. Mich. Aug. 3, 2018) (citing *Abrams v. Fed. Deposit Ins. Corp.*, 944 F.2d 307, 312 (6th Cir. 1991)). Even a stated figure "without any explanation of how the amount owed was derived" is enough to meet a movant's initial burden. *Abrams*, 944 F.2d at 312. Here, Nation Land submits an affidavit by its CFO William Rudner, who attests that he signed the note, is familiar with its terms, and that Sander failed to repay the loan "by the maturity date or at any point thereafter[.]". (Doc. No. 20-1, at 1.)

Sander, in turn, admits to breaching the note. (*See generally* Doc. No. 14.) The elements for breach of contract[5] under Ohio law are: (1) the existence of a valid contract; (2) performance by plaintiff; (3) breach by defendant; and (4) damages suffered by the plaintiff because of breach. *Jarupan v. Hanna*, 878 N.E.2d 66, 74 (Ohio Ct. App. 2007); *Dawson v. Allstate Vehicle & Prop. Ins. Co.*, 709 F. Supp. 3d 444, 450 (S.D. Ohio 2024). Here, Sander admits that he received the $1.26 million loan from Nation Land pursuant to the note. (Doc. No. 14 ¶ 4.) He also admits that he did not repay any amount once it became due. (*Id.* ¶ 6.) Because the entire note remains outstanding, Nation Land has suffered damages from Sander's breach. *See Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 837 (6th Cir. 2007) (stating that, on a motion for summary judgment,

---

[5] Ohio considers promissory notes to be contracts as a matter of law. *Nat'l Fin. Partners Corp. v. Heffern*, No. 1:14-cv-1297, 2015 WL 2169733, at *3 (N.D. Ohio May 8, 2015).

"[d]amages cannot be speculative, but this only means that the *fact* of damages, not their amount, cannot be uncertain").

With Nation Land's initial burden established, the burden shifts to Sander to raise any affirmative defenses.[6] *See Konica Minolta*, 724 F. Supp. 2d at 872. Sander's opposition to the motion hinges on arguing that "the damages are significantly lower than the $3,099,724.62 being sought." (Doc. No. 23, at 4.) He contests the enforceability of the interest rates and late fee clauses of the note.[7] (*Id.* at 2–4.) Nation Land rebuts each of these affirmative defenses on the merits.[8] (*See* Doc. No. 24, at 4–6.)

Sander first argues that the 25% late fee is an unenforceable penalty.[9] (Doc. No. 23, at 2–3.) The question of whether a stipulation in a contract constitutes liquidated damages or a penalty is a question of law. *R.L.R. Invests., L.L.C. v. Wilmington Horsemens Grp., L.L.C.*, 22 N.E.3d 233, 242 (Ohio Ct. App. 2014). A liquidated damages provision arises under a contract that apportions a set amount of damages in the event of default. *CosmetiCredit, L.L.C. v. World Fin. Network.*

---

[6] For a federal court siting in diversity, the question of whether a defense is an affirmative defense under Rule 8(c)(1) is a matter of state law. *Stuckey v. Online Resources Corp.*, 909 F. Supp. 2d 912, 931 (S.D. Ohio 2012) (citing *Roush v. Stone*, No. 2:08-cv-141, 2010 WL 3037003, at *2 (S.D. Ohio Aug. 2, 2010)).

[7] Where a term in a contract is unenforceable, the remainder of the contract without the unconscionable term may be enforced. Restatement (Second) of Contracts § 208 (1979); *see also See Hrenya v. Loch*, No. 84099, 2004 WL 2340414, at *3 n.2 (Ohio Ct. App. Sept. 23, 2004) (stating that defense of unconscionably high interest or interest above statutory limit "does not render the contract void, but simply requires the court to reduce the interest rate to the legal rate" (citation omitted)).

[8] Although Sander's answer failed to plead any of the affirmative defenses he now invokes (*see* Doc. No. 14), the Court will not consider them waived. This is so because, in federal court, "[a] defendant does not waive an affirmative defense if the defense is raised at a time when plaintiff's ability to respond is not prejudiced." *R.H. Cochran & Assocs., Inc. v. Sheet Metal Workers Int'l Ass'n Loc. Union No. 33*, 335 F. App'x 516, 519 (6th Cir. 2009) (citations omitted); *see also Stuckey*, 909 F. Supp. 2d at 931 ("[T]he question of whether an affirmative defense has been waived due to failure to assert that defense in a timely manner[] is governed by federal law."). Here, Nation Land "had actual notice when the [defendant] raised the defense" in his briefing and "was afforded ample opportunity to respond[.]" *Robers v. I.R.S.*, 822 F.3d 854, 587 (6th Cir. 2016) (holding that a defendant did not waive affirmative defense raised for the first time in a summary judgment motion). Nation Land provided a substantive rebuttal on the merits and did not mention the untimely defense. (*See* Doc. No. 24, at 4–6.) Nation Land's actions do not "suggest any prejudice as a result" of the untimely defenses. *R. H. Cochran*, 335 F. App'x at 519.

[9] Under Ohio law, unenforceability of a stipulated or liquidated damages clause is an affirmative defense. *See Harmon v. Haehn*, No. 10-MA-177, 2011 WL 6296731, at *7 (Ohio Ct. App. Dec. 9, 2011).

*Natl. Bank*, 24 N.E.3d 762, 776 (Ohio Ct. App. 2014). "[P]roper liquidated damages are intended to reflect an 'estimation and adjustment' of '[r]easonable compensation for actual damages' in the event of breach." *Little Mountain, LLC v. DR Guns, LLC*, 725 F. Supp. 3d 726, 751 (N.D. Ohio 2024) (quoting *Samson Sales, Inc. v. Honeywell, Inc.*, 465 N.E.2d 392, 394–95 (Ohio 1984)).

Such provisions are unenforceable "when stipulated damages constitute a penalty." *Lake Ridge Acad. v. Carney*, 613 N.E.2d 183, 187 (Ohio 1993). "A penalty is designed to coerce performance by punishing nonperformance[.]" *Pacetti's Apothecary, Inc. v. Rebound Bracing & Pain Sols., LLC*, 206 N.E.3d 61, 67 (Ohio Ct. App. 2023) (internal quotations and citations omitted). Unlike contract damages, which are solely meant to "compensate the nonbreaching party for losses suffered as a result of a breach," a penalty "subjects the breaching party to a liability disproportionate to the damage which could have been anticipated from breach[.]" *Id.*

Under Ohio law, a contractual term that specifies the amount of damages should be treated as liquidated damages and not as a penalty:

> [I]f the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.

*Samson Sales*, 465 N.E.2d at 394 (quotations omitted). In making this assessment, the Court must "construe the contract by its four corners in the light of the situation of the parties at the time of the execution of the contract." *In re Graham Square, Inc.*, 126 F.3d 823, 829 (6th Cir. 1997) (internal quotations and citations omitted). The Court must not "ascertain[] the reasonableness of the damages with the benefit of hindsight after a breach." *Boone Coleman Constr., Inc. v. Piketon*, 50 N.E.3d 502, 514 (Ohio 2016) (citations omitted).

Here, the late fee clearly fails prong one of the *Samson Sales* test because damages for failure to pay the note by its due date are easily ascertainable. From the perspective of the parties at contract formation, and based on the four corners of the note, it would be easy for the parties to estimate with reasonable certainty anticipated damages if Sander failed to repay. Damages would be a mathematical calculation of the unpaid balance plus continually accruing interest.

A factually analogous Ohio appellate court ruling guides the Court's reasoning. In *Pacetti's Apothecary*, a 0.5% per day late fee in a promissory note was held to be a penalty. *Id.* at 65–68. The defendant failed to pay the entirety of a $50,000 three-month duration loan along with $10,000 in interest. Plaintiff sued to recover the principal, interest, and a contractual late fee of 0.5% of the principal (or $250) per day of delinquency. But the court held that when the promissory note was formed, damages were easy to ascertain because of the terms: "$50,000 loaned, plus $10,000 interest charged for three months' use of the money[.]" *Id.* at 67. That plaintiff was "no different than any other person or entity who loans money" and was not entitled to tack on a late fee. *Id.* at 67. A predictable estimation of damages also exists for Nation Land's 90-day loan and compels the Court to construe the 25% late fee as a penalty.

Nation Land's late fee also fails prongs two and three of the *Samson Sales* test. Nothing shows how the late fee bears any relation to anticipated damages. Indeed, the note's interest rates at the default rate and 30% standard rate appear to already compensate Nation Land for the lost time value of the principal for each day it remains outstanding. It is unclear why Nation Land would need an additional form of recovery for late payment. Allowing that recovery in addition to principal and interest, rather than in lieu of the later, "would be a penalty and thus, unenforceable." *See 200 West Apartments v. Foreman*, No. 66107, 1994 WL 505271, at *4 (Ohio Ct. App. Sept. 15, 1994) (declining to enforce late fee where plaintiff recovered unpaid rent under rental

10

agreement). And the contract does not appear to contemplate the late fee as an estimate of damages from some "additional cost [Nation Land] incurred" independent of what interest is compensating for, or "how the late charge[] is reasonably related to the damages sustained." *See R.L.R. Invests.,* 22 N.E.3d at 243.

Rather, the fee is an arbitrary percentage untethered from any anticipated loss. Charging a quarter of whatever outstanding amount becomes late is a substantially larger proportion than what other courts have found to be penalties. *See, e.g.*, *R.L.R. Invests.*, 22 N.E.3d 233 (holding $500 per diem late fee on $16,666 monthly rent was a penalty); *Pacetti's Apothecary*, 206 N.E.3d 61 (holding 0.5% per diem late fee on $50,000 principal was a penalty). This all makes the late fee inconsistent "with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof." *Samson Sales*, 465 N.E.2d at 394 (quotations omitted). Accordingly, the Court holds that 25% late fee is an unenforceable penalty.

Sander next argues the interest rates in the note are unenforceable because of Ohio usury and consumer protection laws.[10] He invokes two statutes to attempt to invalidate the two contractual interest rates.

First, Sander argues that the interest rates exceed the maximum 28% rate allowed by Ohio Rev. Code § 1321.40. (Doc. No. 23, at 3.) That statute is part of Ohio's Short-Term Lender Act ("STLA"). Ohio Rev. Code § 1321.40(A). But the STLA does not apply here. The STLA's interest rate cap applies only to "a loan made pursuant to the STLA." *Ohio Neighborhood Fin., Inc. v. Scott*, 13 N.E.3d 1115, 1124 (Ohio 2014). The STLA covers licensees, defined as "a person licensed to make short-term loans under [the STLA]." Ohio Rev. Code § 1321.35(E). Here, there

---

[10] The argument that "a statute renders a portion of the agreement illegal" is an affirmative defense. *JPMorgan Chase Bank, N.A. v. Gallabrese*, 266 N.E.3d 456, 469 (Ohio Ct. App. 2025).

is no evidence that Nation Land is licensed to issue STLA loans, and Sander does not point to evidence that could conceivably show the existence of such a license. Without an STLA license, Nation Land is "not entitled to make short-term loans pursuant to the STLA." *See Ohio Neighborhood Fin.*, 13 N.E.3d at 1124. Accordingly, the note "does not qualify as a 'short-term loan' subject to the requirements of the STLA." *Id.*

Second, Sander argues that the interest rates are unenforceable because they fall under the statutory definition for unconscionability in the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code § 1345.01 *et seq.* (Doc. No. 23, at 3.) But the OCSPA does not apply either. The OCSPA applies only to loans that are "consumer transactions," which it defines as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual *for purposes that are primarily personal, family, or household*, or solicitation to supply any of these things." Ohio Rev. Code § 1345.01(A) (emphasis added).

Sander does not point to anything suggesting the note is a "consumer transaction." Although Sander now claims that "[t]he Note is silent as to the purpose of the loan" (Doc. No. 23, at 4), he is a party to the note and presumably has personal knowledge about why he borrowed $1.26 million. Sander could have submitted an affidavit on his understanding of the loan's purpose or any of his records pertaining thereto, but did not do so. Discovery has now closed, and Sander did not submit any supplemental briefing regarding evidence of purpose despite seeking leave to do so. (*See* Minutes of Proceedings [non-document], 04/07/2026.) Even with every opportunity to obtain relevant evidence, Sander has not pointed to anything contesting Nation Land's assertion that the loan was for business purposes. (*See generally* Doc. No. 1-1; Doc. No. 24, at 5.) Instead, Sander relies on "[c]onclusory statements unadorned with supporting facts" to support his defense. *See Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020). This is insufficient to establish a genuine factual

dispute. *Id.* Sander cannot "allege or present any evidence of a 'consumer transaction' on which an OCSPA violation could be based." *Truist Bank v. Eichenberger*, 210 N.E.3d 982, 998 (Ohio Ct. App. 2023). The OCSPA does not apply here.

As Nation Land correctly articulates, Ohio law permits the note's interest rates. Parties to a promissory note can stipulate to a rate higher than the statutory 8% annual maximum rate so long as the note falls into an exception in Ohio Rev. Code § 1343.01(B). *Classic Funding, LLC v. Louis Burgos, LLC*, No. 80844, 2002 WL 31478977, at *1 (Ohio Ct. App. Nov. 7, 2002). Here, the promissory note clearly falls within two statutory exceptions, either of which would independently permit the contractual interest rate. *See Classic Funding*, 2002 WL 31478977, at *1; *Argote-Romero v. LAZ Parking LTD., LLC*, 264 N.E.3d 859, 873 (Ohio Ct. App. 2025). First, the principal exceeds $100,000. *See* Ohio Rev. Code § 1343.01(B)(1). Second, the note is payable in one installment, and no evidence shows that the note is "secured by household furnishings or other goods used for personal, family, or household purposes." *Id.* § 1343.01(B)(5).

This Court is bound to respect Ohio's "preference to enforcing the stipulated rate of interest contained in a contract assented to by the parties[.]" *Capital Fund Leasing, L.L.C. v. Garfield*, 735 N.E.2d 23, 24 (Ohio Ct. App. 1999). Even where total interest is "deeply troubling," Nation Land is entitled to recover the contractual rate. *Oak River Equity Ventures, LLC v. Boss Lifestyle LLC*, No. 2:23-cv-446, 2024 WL 3895778, at *4 (S.D. Ohio Aug. 21, 2024) (holding that 50% interest on principal and 5% default interest on delinquent principal and interest was permitted by §§ 1343.01 & 1343.04); *First Bank of Ohio v. Wigfield*, Nos. 07AP-561 & 07AP-562, 2008 WL 747742 at *5 (Ohio Ct. App. Mar. 20, 2008) (holding that trial court abused its discretion in awarding lower statutory rate instead of 25% contractual interest where note provided for

13

increasing interest rate from 14.378% to 25% upon default). The Court holds that the interest rates are enforceable.

The Court now turns to its final inquiry of determining Nation Land's damages request in light of the above holdings. Damages here constitute outstanding principal plus contractual interest. Where the terms of a promissory note are clear, as they are here, their interpretation is a matter of law. *Cranberry Fin., L.L.C. v. S & V P'ship*, 927 N.E.2d 623, 625 (Ohio Ct. App. 2010) (citations omitted). The note specifies two related but independent interest terms: (1) the 30% standard interest, and (2) the default interest rate. For the standard interest rate, the note provides for 30% annual interest to apply on any principal that remains outstanding. (*See* Doc. No. 1-1, at 7.) The default rate, meanwhile, applies for the duration of any event of default. That rate charges 40% annual interest on the outstanding principal, on the past due and continually accruing 30% annual standard interest, and "on all other amounts payable to" Nation Land. (Doc. No. 1-1, at 7.) Sander's delinquency on the note constitutes an ongoing default since March 12, 2024. That triggered the 40% default rate, which accrues as of March 12, 2024.

Applying the above contract terms, the Court holds that Nation Land is entitled to damages in the amount of $1,260,000 in principal, plus interest based on the two independent rates. Those two interest rates accrue as follows. The 30% standard rate accrues per annum on the principal beginning on the loan issue date of December 12, 2023, until principal is repaid in full. The 40% default rate accrues per annum on outstanding principal and unpaid interest accruing at the 30% standard rate (as well as future amounts payable under the note), beginning on the default date of March 12, 2024, until Sander cures the default. The Court further holds that Nation Land cannot recover interest on the $315,000 late fee, as that is an unenforceable penalty and cannot be "payable to" Nation Land.

14

## IV.     CONCLUSION

Nation Land has demonstrated that Sander has breached the promissory note. It is entitled to recover unpaid principal under the note and enforce the two contractual interest rates. Nation Land may not enforce the 25% late fee or charge any interest on that fee because it is an unenforceable penalty. Because Nation Land's motion seeks damages that include that unenforceable late fee, the Court cannot award the full requested sum. Instead, the Court holds that Nation Land is entitled to damages in the amount of $1,260,000, plus ongoing accruing interest on outstanding principal at the 30% annual standard rate from December 12, 2023, plus ongoing accruing interest at the 40% annual default rate on amounts payable on the note (principal plus 30% interest) from March 12, 2024.

As such, for the reasons set forth above, Nation Land's motion for partial summary judgment is **GRANTED in part** and **DENIED in part**.

Inasmuch as Count II remains pending, Nation Land is directed to advise the Court within fourteen (14) days as to whether it wishes to pursue that remaining claim.

**IT IS SO ORDERED.**

Dated: June 18, 2026

_____
**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

15